# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00635-CV

**Mari Tierney Hartbrich, Appellant**

**v.**

**Bret-Ashley Vance, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. 92-00668, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING

This is an appeal from the district court=s order striking appellant Mari Tierney Hartbrich=s

pleadings as a discovery sanction and modifying the parties=divorce decree to award appellee Bret-Ashley

Vance the right to establish the primary residence of the couple=s two children. The trial court made written

findings of fact and conclusions of law. We will affirm the order of the district court.

## FACTUAL BACKGROUND

This suit affecting a parent-child relationship was brought to decide which of the parents,

Hartbrich or Vance, should have the right to establish the primary residence of the children. The parties

were divorced in 1992 in Austin and were appointed joint managing conservators. The record does not

contain the divorce decree, but apparently Hartbrich was initially the primary care parent. Hartbrich now

lives in California; Vance remained in Austin. Hartbrich voluntarily relinquished physical custody of the

children to their father, and they have been living with him in Austin since at least October 1997. In May 1999, Vance filed a motion to modify the decree to confirm that he had the right to decide the children=s primary residence, alleging that there had been a material change in circumstances. The parties agreed to temporary orders which were signed on May 18, 1999, giving Vance the right to establish the children=s primary residence and limiting the children=s residence to Travis County pending further agreement or order of the court. The agreed order also provided that the parties were to reevaluate all issues concerning their children after one year.

In June 2000, Hartbrich apparently changed her mind about the arrangement. She filed a motion asking that she be Agranted the right of primary placement@ for the children. She also alleged that there had been a material change in circumstances and that the earlier decree had become unworkable or inappropriate. Neither party asked to modify their joint managing conservatorship. On June 27, 2000, both children filed affidavits[1] choosing their mother as their sole managing conservator, although Hartbrich never sought that relief. On July 18, 2000, the oldest child filed an amended affidavit requesting to the contrary that she be allowed to live with her father. The court appointed a guardian ad litem on July 20.

---

[1] At the time the affidavits were filed, the statute then in effect provided that a child ten years of age or older could file an affidavit stating the child=s preference for a primary care parent; the oldest child in this case was one month short of her eleventh birthday and the youngest was only nine years of age. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1390, ' 16, 1999 Tex. Gen. Laws 4696, 4700, eff. Sept. 1, 1999 (reducing age for filing affidavit of preference from twelve years to ten years of age). The statute was amended in 2001. *See* Tex. Fam. Code Ann. ' 156.101(2) (West Supp. 2002) (raising minimum age at which child can file affidavit stating preference of primary care parent from ten years of age to twelve years of age).

A contested hearing on temporary orders was had before an associate judge on August 8 and 9. The judge ordered that Vance continue to have exclusive right to determine the primary residence of the children, as ordered in the earlier agreed temporary orders, and ordered Hartbrich to pay child support. The district court approved the associate judge=s temporary orders on November 15, 2000. Trial on the merits was set for March 5, 2001.

Hartbrich=s attorney was allowed to withdraw on January 26, 2001. Hartbrich filed *pro se* a request for a jury trial. The case was reset for jury trial on September 10, 2001. On January 31, Vance served Hartbrich with requests for written discovery relating to both claims and defenses on the issues in dispute. The answers to that discovery appear to have been due March 2. Vance subsequently agreed to extend the deadline until March 9. On March 21, when Hartbrich still had not responded, Vance filed a motion to compel Hartbrich to answer discovery and asked for sanctions. At an April 4 hearing on the motion, the court granted the motion to compel and signed an order requiring Hartbrich to answer Vance=s written discovery by April 24, and further ordered that if she failed to comply her pleadings would be stricken. The court also ordered Hartbrich to pay Vance $777.50 attorney=s fees. Hartbrich appeared in person at the April 4 hearing; the court announced its ruling verbally in open court as well as in writing. She received a written copy of the order informing her of the April 24 deadline.

On April 24, Hartbrich called Vance=s attorney and requested yet another extension of time to answer the discovery. She told the attorney that she was unable to complete the discovery due to a sudden death in her family. The attorney advised Hartbrich that she could not agree to an extension without

consulting her client. Hartbrich did not submit answers to the discovery. Nevertheless, the attorney for Vance did not immediately seek court intervention.

On May 8, in the continued absence of response, Vance filed a motion to strike Hartbrich=s pleadings for failure to comply with the April 4 order. The court set a May 17 hearing on the motion. On May 16, Vance=s attorney was contacted by a new attorney for Hartbrich, who related that Hartbrich had attempted to send the discovery responses on April 23, but there had been a mistake made by the express delivery company. This explanation contradicted Hartbrich=s earlier excuse to Vance=s attorney on April 24 when she stated that she had been unable to complete the discovery due to her aunt=s death. Vance went forward on his motion to strike. After a hearing on May 17, an associate judge recommended striking Hartbrich=s pleadings. At Hartbrich=s request, the court set a de novo hearing for June 11 before the district judge.

By the time of the June 11 hearing, Hartbrich still had not answered the January 31 discovery requests. Vance=s attorney testified at the hearing about the discovery delay, her dealings with Hartbrich after Hartbrich=s attorney withdrew, and the attorney=s fees incurred by Vance in pursuing discovery. Hartbrich testified also, describing some of her efforts to comply, and she gave limited responses on other issues. At the hearing, she tendered incomplete responses to the discovery requests. The district court found that Hartbrich had shown a pattern of obstruction and delay, that she understood her obligations but consciously disregarded the prior court order and her obligation to answer written discovery, and that, at the time of the hearing, she still had not fully answered the discovery requests. The court struck Hartbrich=s pleadings and, in light of her default, proceeded on Vance=s request to modify the original

**4**

decree. The court rendered an order providing among other terms that: (1) the parties would continue as joint managing conservators; (2) Vance had the sole right to establish the primary residence of the children; and (3) Hartbrich was to pay him child support. The order provided for the standard possession order in accordance with the Family Code. The court expressly found that the lengthy and continuing uncertain status of the children was against their best interests and the terms of the modification order were in the best interests of the children. Hartbrich now appeals.

## DISCUSSION

Hartbrich complains on appeal that the district court abused its discretion by: (1) striking her pleadings and rendering a default order, and (2) granting the modification in the absence of evidence that the modification would be a positive improvement or in the best interest of the children.

### *Sanctions*

We review a district court=s decision finding discovery abuse and ordering sanctions for an abuse of discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986). A trial court is accorded the broadest discretion in choosing and imposing discovery sanctions. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). A court abuses its discretion when it acts arbitrarily and capriciously without reference to any guiding principles of law. *Id.* at 241-42; *Ditraglia v. Romano*, 33 S.W.3d 886, 888 (Tex. App.CAustin 2000, no pet.).

A court abuses its discretion if it imposes discovery sanctions that are not just. *See Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). The justness of a

**5**

sanction is measured by (1) whether the sanction is directed at the offender and remedies the prejudice caused by the noncompliance, and (2) whether the sanction is excessive or whether the Apunishment fits the crime.@ *Id*. The appellate court considers factors such as whether the trial court first imposed lesser sanctions and whether the discovery abuse is severe enough to justify the presumption that the offender=s claims or defenses lack merit. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). Sanctions that prevent a party from presenting its case on the merits should not be imposed absent the party=s bad faith or counsel=s flagrant disregard of discovery rules. *Id.* Because the best interests of children are of paramount importance, more severe sanctions should be employed only when lesser ones have proven unsuccessful. *In re P.M.B.*, 2 S.W.3d 618, 624-25 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

With regard to attempts at lesser sanctions, an order compelling discovery that does nothing more than order compliance is not an attempt at a lesser sanction. *See GTE Mobilnet of South Tex. Ltd. P=ship v. Telcell Cellular, Inc.*, 955 S.W.2d 286, 298 (Tex. App.CHouston [1st Dist.] 1997, pet. denied). However, an order compelling discovery coupled with language that noncompliance can result in dismissal does constitute a lesser sanction. *Andras v. Memorial Hosp. Sys.*, 888 S.W.2d 567, 572 (Tex. App.CHouston [1st Dist.] 1994, writ denied); *see also Allied Resources Corp. v. Mo-Vac Serv. Co., Inc.*, 871 S.W.2d 773, 779 (Tex. App.CCorpus Christi 1994, writ denied) (holding order threatening death penalty sanction was unequivocal and self-executing); *Jaques v. Texas Employers=Ins. Ass=n*, 816 S.W.2d 129, 131 (Tex. App.CHouston [lst Dist.] 1991, no writ) (holding death penalty sanctions appropriate where party was aware that pleadings would be stricken if he failed to comply with order); *but*

**6**

*see In re Polaris Indus.*, 65 S.W.3d 746, 755-56 (Tex. App.CBeaumont 2001, orig. proceeding); *Williams v. Akzo Nobel Chem., Inc.*, 999 S.W.2d 836, 844 (Tex. App.CTyler1999, no pet.); *Westfall Family Farms, Inc. v. King Ranch, Inc.*, 852 S.W.2d 587, 592 (Tex. App.CDallas 1993, writ denied).

The district court=s finding that Hartbrich had engaged in discovery abuse is supported by the record. Although the parties had agreed to all matters from 1997 to 2000, Hartbrich eventually changed her position regarding Vance=s serving as primary parent, filed her own motion, and requested a jury trial on the issues, all necessitating more extensive discovery concerning both claims and defenses. Hartbrich=s attorney withdrew on January 26 and Hartbrich did not retain a new attorney until May 16, the day before the first hearing on the motion to strike. Hartbrich persistently failed to furnish discovery and ignored a court order to do so. At the time of the hearing on Vance=s motion to strike, Hartbrich still had not complied with the discovery requests. It was Hartbrich=s responsibility to obtain representation promptly, especially in light of the impending hearings and trial dates. Hartbrich=s *pro se* status did not excuse her from her obligations to answer discovery and prepare her claims and defenses for trial or excuse her from complying with the rules of law or procedure. *Steffan v. Steffan*, 29 S.W.3d 627, 631 (Tex. App.CHouston [14th Dist.] 2000, pet. denied). ALitigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.@ *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *Chandler v. Chandler*, 991 S.W.2d 367, 378-79 (Tex. App.CEl Paso 1999, pet denied).

Our review of the record does not reveal that the district court=s sanction was excessive. Hartbrich was present at the April 4 hearing when the order compelling her to respond to discovery was

signed. The court informed her that if she did not answer the discovery her pleadings would be stricken. She was ordered to reimburse Vance for the attorney=s fees he incurred as a necessity of the motion to compel. Her excuse to Vance=s attorney on April 24 was at odds with her subsequent story as conveyed by her new attorney. She had not responded to discovery by May 17 and she had not done so by the June 11 hearing. Her dilatory tactics and the fact that she was less than candid about the reasons for her failure to obey the order support the presumption that her claims and defenses lacked merit. *See Blackmon*, 841 S.W.2d at 849.

More importantly, the record contains evidence from which the court could conclude that prolonging the legal tug-of-war between these two parents was detrimental to their children. The district court=s sanction was directed at the offender and was crafted to address the prejudice the discovery abuse caused the children. When a court sits as the fact finder, the court is entitled to judge the credibility of the witnesses and the weight to be given their testimony. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.C Dallas 1989, writ denied). The fact finder is able to evaluate a witness=s demeanor and is entitled to believe all, part, or none of a witness=s testimony. *Id*. The trial court expressly applied the standards set out in *Transamerica* in ruling on the motion to strike and in ordering sanctions. We hold that Hartbrich has not shown that the district court abused its discretion in striking Hartbrich=s pleadings for discovery abuse. We overrule Hartbrich=s first issue on appeal.

Furthermore, we note that although the temporary orders in place during the pendency of the action favored the father and superseded the decree while in effect, it was the original divorce decree to which the parties= pleadings were addressed. Striking her pleadings did not alter Hartbrich=s legal position

**8**

under the decree. The decree named the parties joint managing conservators; neither party requested modification of that order. The decree gave Hartbrich the right to establish the primary residence of the children. Vance=s motion sought to reverse those terms in his favor, while Hartbrich=s pleadings, in effect, asked that the terms of the decree be continued unchanged. Unless, pursuant to Vance=s motion, the court made the findings necessary to modify the orders in the decree, Hartbrich would remain the primary parent even in the absence of her pleadings.

*Modification*

By Hartbrich=s agreement, the children lived with their father from October 1997 to June 2000, and pursuant to the court=s temporary order continued living with him until the hearing on June 11, 2001, a period of almost four years. In light of her default, the court proceeded to consider Vance=s pleadings asking that the previous decree be modified so as to grant him the right to establish the children=s primary residence, but he retained the burden to prove in accordance with the statute that modification was in the children=s best interest or else the previous decree would remain in effect. The trial court found that he met his burden.

Hartbrich complains that the trial court abused its discretion by rendering a decision on the merits of Vance=s motion. She argues that the trial court could not properly proceed to render a final decision at the June 11 hearing, but she cites us to no authority for that proposition and did not raise that complaint in the trial court. She contends that the record contains no evidence to support a number of the court=s express findings, in particular the finding that modification was in the best interest of the children.

**9**

She complains that the court failed to find, as required, that modification was a positive improvement for the children, but in any event she contends the record contains no evidence of that fact either.

We review a district court=s decisions concerning child custody matters in a suit affecting the parent-child relationship for an abuse of discretion. *Pena v. Pena*, 8 S.W.3d 639, 639 (Tex. 1999); *Weimer v. Weimer*, 788 S.W.2d 647, 650 (Tex. App.CCorpus Christi 1990, no writ). The Family Code provides that Athe best interests of the child[ren]@are always the primary consideration in questions of child custody and access. Tex. Fam. Code Ann. ' 153.002 (West 1996); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.CAustin 1997, no pet.). A trial court=s decision about the best interests of children will not be disturbed unless the record as a whole shows a clear abuse of discretion, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), meaning that it acted unreasonably, arbitrarily, or without regard to guiding legal principles. *Lilley v. Lilley*, 43 S.W.3d 703, 705 (Tex. App.CAustin 2001, no pet.).

Evidentiary challenges under an abuse of discretion standard of review are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *Doyle*, 955 S.W.2d at 479; *contra Jenkins v. Jenkins*, 16 S.W.3d 473, 478 (Tex. App.CEl Paso 2000, no pet.). Hartbrich argues that, even though her pleadings were stricken and an order rendered against her, Vance was still under a burden to produce evidence showing that a modification of the decree would be a positive improvement for and in the best interests of the children.[2] She points out that Vance was not personally present at the hearing and did not testify but nonetheless was awarded the relief he requested.

---

[2] *See* Act approved April 20, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws 113, 174, eff. April 20, 1995, and Act approved June 16, 1995, 74th Leg., R.S., ch. 751, ' 48, 1995 Tex. Gen.

Laws 3888, 3906, eff. Sept. 1, 1995 (former Tex. Fam. Code Ann., 156.202(2)), *repealed by* Act of May 23, 2001, 77th Leg., R.S., ch. 1289, ' 12(2), 2001 Tex. Gen. Laws 3108, 3108-09, eff. Sept. 1, 2001 (current version in Tex. Fam. Code ' 156.101 (West Supp. 2002)).

On the other hand, both Hartbrich and her attorney were present at the hearing. Vance=s attorney and Hartbrich both testified. Hartbrich claims the record lacks evidence to support the court=s order. Although the evidence presented at the hearing was slim, we hold it was sufficient for the court to exercise its discretion. The trial court took judicial notice of the court=s extensive file over the two years the matter was pending in court, including the pleadings, motions, and orders up to June 11, and the status of the children during the pendency of the proceeding. It is undisputed that Hartbrich voluntarily relinquished possession of the children to Vance in October 1997. With Hartbrich=s consent and agreement that the change was in their best interest, the children resided with Vance from that time until the contested temporary hearing in August 2000, and they continued living with him thereafter pursuant to the court=s temporary order which found the arrangement to be in their best interest. At the time of the hearing on June 11, 2001, the children had been living with Vance almost four years. Hartbrich testified on cross-examination that the children were making good grades in school and that the children had relatives, including a grandmother and a half-sister, living in Austin. Vance=s pleadings alleged and Hartbrich never denied that she voluntarily left the children with Vance for a period of more than six months.[3] The temporary orders in effect for most of the pendency of the proceeding were entered pursuant to the parties=

---

[3] *See* Tex. Fam. Code Ann. ' 156.101(3) (West Supp. 2002) (providing for modification of conservatorship if Athe conservator with exclusive right to establish the primary residence of the child has voluntarily relinquished the primary care and possession of the child in another person for at least six months.@).

agreed arrangement as to the children=s best interest or rendered following a lengthy evidentiary hearing to decide their welfare.

Hartbrich specifically complains that the court erred by failing to find whether the modification sought by Vance would be a positive improvement in the children=s circumstances, an element required under former section 156.202 of the Family Code. She contends that the record contains no evidence of positive improvement. Before the June 11 hearing, the legislature repealed section 156.202, and section 156.101 was amended to set forth the standards applicable to all conservatorship rulings. *See* Tex. Fam. Code Ann. ' 156.101 (West Supp. 2002). The trial court signed the final order on August 15 and the statutory changes became effective on September 1. As amended, movants now are only required to show that (1) the circumstances of the child, a conservator, or any other party affected by an order have materially and substantially changed and (2) the modification would be in the best interest of the child. *See id.* The amended statute eliminated the Apositive improvement@[4] requirement for modifications. *See id.* While acknowledging that section 156.202 was repealed effective September 1, 2001, Hartbrich nevertheless asserts that the repealed section 156.202 governs this case.

---

[4] The requirement of Apositive improvement@ in modification cases had its roots in the legislative policy that because a change of custody disrupts the child=s living arrangement and the channels of the child=s affections, a change was only to be made when the trial court is convinced that the change will be a positive improvement for the child. *In re Ferguson*, 927 S.W.2d 766, 968 (Tex. App.CTexarkana 1996, no writ). By repealing section 156.202 and amending section 156.101, the legislature arguably broadened a trial court=s discretion in modifying custody orders and lessened the movant=s burden. In practice, the Apositive improvement@ prong is subsumed within the issue of the children=s best interest.

At the time the order appealed from was signed, positive improvement was a required element to be proven; two weeks after the modification order was signed, however, the requirement was removed. When the court issued its findings of fact October 8, it did not make the repealed finding. Were we now to reverse and remand the cause for a new trial on that basis, the trial court would not be required to find positive improvement in order to modify the decree. Thus, reversal on that ground would be a useless act.

We hold that by ordering modification the trial court made an implied finding of positive improvement. In any event, were we to accept Hartbrich=s contention, the record in this case shows that the modification ordered by the district court was a positive improvement. We disagree with Hartbrich=s argument that there is insufficient evidence of either positive improvement or best interest. The divorce decree which granted Hartbrich primary custody had clearly become unworkable as the trial court found. Contrary to the decree, Hartbrich voluntarily allowed the children to live with Vance for several years. Hartbrich later sought to revert to the orders in the court=s 1992 decree when the record showed they were in conflict with the actual practice which had long been in effect. Vance=s effort to modify sought to make permanent the status quo as it had existed since 1997; the cause continued without final resolution for a lengthy time. The district court=s order merely formalized the status quo, once the prior order had become unworkable. Providing consistency and permanency was a positive improvement for these children. The trial court found that living in an unresolved status was not in the children=s best interest; therefore, permanency was necessarily a positive improvement. We hold that the district court did not abuse its

discretion in modifying the decree and awarding Vance the right to determine the primary residence of the children.  We overrule Hartbrich=s second issue on appeal.

## CONCLUSION

The order of the district court is affirmed.


Marilyn Aboussie, Chief Justice

Before: Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   November 7, 2002

Do Not Publish